FILED - KZ
April 16. 2025 4:02 PM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
__ems__ Scanned by ES 4/17

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN

**1:25-cv-425**
**Paul L. Maloney**
**United States District Judge**

Ashley Eilene Franklin, Plaintiff

v.

David C. Bonfiglio, and all other  Defendants

## VERIFIED COMPLAINT FOR CIVIL RIGHTS

This action arises under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, and other constitutional and statutory provisions

## I. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and supplemental jurisdiction under 28 U.S.C. § 1367.

Diversity Jurisdiction is proper, Plaintiff is a resident of Michigan and all Defendants are residents of Indiana.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff resides in the Western District of Michigan and a substantial part of the events giving rise to these claims occurred within this District.

## II.    PARTIES

Plaintiff Ashley Eilene Franklin is a resident of Dowagiac, Michigan. She is the biological mother of the minor child involved and has been the child's primary caretaker since birth.

Defendants include state judges, court personnel, government officials, and agents of court-ordered programs in Elkhart County, Indiana who acted under color of law in violating Plaintiff's constitutional and statutory rights.

### III.    FACTUAL ALLEGATIONS AND CASE TIMELINE Full timeline of events to follow: Michigan AOP, Indiana court actions, February 14, 2023 hearing, May 2, hearing, July 20, custody change, September 19, 2023, obstruction, denial of ADA accommodations, retaliation, CAPS visitation issues, criminal charges...

### IV.    LEGAL CLAIMS (COUNTS I–XII)

Detailed claims against each defendant, grouped by federal and state violations, ADA violations, abuse of process, IIED, fraud on the court, conspiracy, Monell liability...

### V.    PRAYER FOR RELIEF

Plaintiff respectfully seeks the following relief:

-    General damages in the amount of no less than

$25,000,000 collectively from the defendants

-    Actual damages of not less than $300,000;

-    Punitive damages to be determined at trial;

-    Declaratory and injunctive relief including restoration of custody and recognition of the Michigan AOP;

-    All other relief as this Court deems just and proper.

### VI. VERIFICATION

I, Ashley Eilene Franklin, verify under penalty of perjury that the factual allegations set forth in this

complaint are true and correct to the best of my knowledge and belief.

Date: _4 - 16 - 25_

Signature: _Ashley Franklin_

Ashley Eilene Franklin

**VERIFICATION AND CERTIFICATION**

I, Ashley Eilene Franklin, am the Plaintiff in this action. I certify under penalty of perjury that:

1.      I have read this Complaint and know the contents thereof;

2.      The facts stated in this Complaint are true and correct to the best of my knowledge, information, and belief;

3.      The claims presented are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law;

4.      The factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

5.      I am not presenting this action for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

I understand that if any of the above representations are found to be knowingly false, I may be subject to sanctions under Federal Rule of Civil Procedure 11(c).

Executed on this _16_ day of _April_____, 2025.

Signature: _Ashley Franklin_

Ashley Eilene Franklin

Plaintiff, Pro Se

95255 Wildwood Drive Dowagiac, MI 49047 ashfranklin22@gmail.com

JS 44 (Rev. 04/21) CIVIL COVER SHEET

**Plaintiff:** Ashley Eilene Franklin

**Defendants:** Judge David C. Bonfiglio, Referee James N. Fox, GAL Mary Raatz, Thomas Stipp,

Brent Fifer Jr., Eric Blackman, Joel Williams, Heather Schuetz, Rebecca Shelter-Fast, Lashell Brown, Dr.

Warren Sibilla, Christopher Anderson, Hannah Musgraves, Lisa Brown and Sumaita Hassan.

County of Residence of Plaintiff: Van Buren County (Dowagiac, Michigan)

County of Residence of First Listed Defendant: Elkhart County, Indiana

**Basis of Jurisdiction:**  Federal Question (U.S. Government Not a Party)

**Citizenship of Parties:** Plaintiff - Citizen of Michigan; Defendants - Citizens of Indiana

Nature of Suit: 440 Civil Rights - Other

Origin: 1. Original Proceeding

Requested in Complaint: Yes - Jury Demand

Monetary Demand: Over $75,000

Related Case: Franklin v. Bonfiglio et al. - U.S. District Court, Western District of Michigan

**INDEX OF SECTIONS**

1.    Jurisdiction and Venue

2.    Parties

3.    Factual Background

4.    Defendants Description

5.    Count I – Substantive Due Process

6.    Count II – Procedural Due Process

7.    Count III – Disability Discrimination (ADA & Rehab

Act)

8.    Count IV – Conspiracy to Violate Civil Rights

9.    Count V – Full Faith & Credit / UCCJEA / PKPA

10.    Count VI – Retaliation for Protected Conduct

11.    Count VII – Monell Liability

12.    Count VIII – Fraud on the Court

13.    Count IX – Family Unity and Equal Protection

14.    Count X – Abuse of Process

15.    Count XI – Malicious Prosecution

16.    Count XII – Intentional Infliction of Emotional Distress

17.    Count XIII – Civil Conspiracy

18.    Prayer for Relief

19.    Verification and Certification

20.    Exhibit Index

## CASE OVERVIEW

This is a federal civil rights action brought by a Michigan mother whose constitutional rights were violated by Elkhart County, Indiana, officials acting without jurisdiction, without authority, and in knowing violation of federal and state law.

Plaintiff Ashley Eilene Franklin is and has always been a legal resident of Michigan. Her child was born in Michigan. Paternity was legally established in Michigan through a signed, notarized Affidavit of Parentage. Yet Indiana courts, without any evidentiary hearing, jurisdictional findings, or lawful registration of the Michigan AOP, issued custody and support orders that removed the child from her care and restricted her parental rights—actions that continue to this day.

These actions were taken despite the complete absence of subject matter jurisdiction on multiple independent grounds:

1. Custody Jurisdiction under the UCCJEA – Indiana was never the child's home state under IC 31-21 or MCL 722.1101, and Michigan never relinquished jurisdiction.

2. Child did not live in Indiana for 6 months prior to Father filing for paternity.

3. Improper Use of Indiana Paternity Law (IC 16-37-2-2.1) – Indiana accepted a Michigan AOP under a statute that only applies to Indiana-born children.

4. Violation of UIFSA – Indiana IV-D filed for support using the same Michigan AOP without proper registration, notice, or hearing.

5. Full Faith and Credit Violations – Indiana courts failed to recognize Michigan's valid paternity determination and open Title IV-D support case.

6. No Best Interest Findings, No Motion to Modify, and No Evidentiary Hearings –Indiana issued custody and contempt orders with no legal basis or process.

Indiana officials acted under color of law, deprived Plaintiff of her parental rights, and subjected her to retaliation, humiliation, and legal trauma. These violations have devastated her family and severed a young child from his mother and siblings without lawful authority.

Plaintiff now seeks relief under 42 U.S.C. § 1983, the ADA, the Full Faith and Credit Clause, the UCCJEA, the PKPA, and state tort law. She asks this Court to declare Indiana's orders void, restore custody, stay ongoing enforcement, and award compensatory and punitive damages for the constitutional and statutory injuries inflicted.

## FACTUAL BACKGROUND

But what about him? What did he do to deserve this? This child—a 1-year-old baby—was torn from his mother and siblings without a hearing, without abuse, and without cause. He did nothing wrong. There was no emergency. There was no investigation. There was no hearing on custody. There was no law supporting what was done to him.

The system turned him into a prisoner of process. It used state tools to punish a mother who tried to follow the law— and when she did, they moved the goalpost. When she objected, they retaliated. When she spoke out, they silenced her.

His siblings can't see him. His mother can't whisper to him at CAPS. He's not allowed to travel for holidays or family reunions. Not because his mother is unfit—but because she was never allowed to prove that she wasn't unfit. Ashley Franklin has been a mother for 20 years, she currently has and has always had, full physical custody of her children from a previous marriage. All three of her older children are well mannered, straight A's, National Honors Society, community involved and proud siblings of their little brother. Ashley has never had her parenting questioned until this case. She has no criminal history, no history of drug use, no mental health history and no open child protection cases. In fact, when the child's father called the Indiana Department of Child Services (DCS) before the first hearing, the report was unsubstantiated. The DCS caseworker interviewed all of Plaintiff's children, reviewed her therapy and medical records, observed her with the baby, and found no concerns. Yet that report was ignored.

At the time of the February 14, 2023 hearing in Elkhart County, Plaintiff had sole physical custody of her son, who lived with mother and his 3 siblings. The father—Brent Fifer Jr.—filed a Verified Petition to Establish Paternity using Indiana Code § 16-37-2-2.1, a statute that applies only to children born in Indiana, based on an Indiana paternity affidavit. But Plaintiff's child was born in Michigan. The parties signed a Michigan Acknowledgment of Parentage (AOP) at the hospital—legally establishing paternity and granting

Plaintiff initial custody. Rather than filing a complaint for custody or parenting time, Mr. Fifer used the Indiana paternity statute to bypass due process entirely. Indiana never registered the Michigan AOP, never conducted a UCCJEA hearing, and never issued Findings of Fact and Conclusions of Law regarding jurisdiction. No emergency existed. No transfer was ordered by Michigan. Nevertheless, Indiana courts treated the Michigan AOP as if it were an Indiana one and issued paternity, custody, and child support orders without legal authority.

At no point in this entire case, was a proper custody complaint or parenting time petition filed. Prior to the February 14, 2023 hearing, Mother filed a Motion to Continue, which was denied. At the February 14, 2023 hearing, Mother was given primary physical custody and joint legal custody. Judge Bonfiglio ordered hair follicle drug tests for both parents and a Guardian Ad Litem to represent the best interest of the minor child. The next hearing was May, 2, 2023, Mother filed a Motion to Relocate back to her domicile state of Michigan. This was denied without a hearing, Mother was threatened with losing custody of minor child if she moved back to Michigan.

The GAL filed a report with recommendations on July, 5, 2023. Father then filed a Motion to Implement GAL's Recommendations. A hearing was scheduled for July 20, 2023, for Father's motion. At the July 20, 2023 hearing, Indiana courts awarded sole legal and primary physical custody to the father—without change in circumstances, without evidence, and without evaluating the best interests of the child.

The hearing on July 20, 2023, lasted approximately 18 minutes. It was not an evidentiary hearing. No witnesses were called. No exhibits were admitted. The judge made his decision solely based on a Motion to Implement the GAL's Recommendation—a report filed by Guardian ad Litem Mary Raatz, who had never met the mother, never met the child, or Father. She conducted no investigation and does not meet the legal qualifications of a GAL under Indiana law. Plaintiff had submitted proof of compliance with court orders,

including, a scheduled appointment with court-approved psychologist Dr. Warren Sibilla, and a negative hair follicle drug test, a full psychological evaluation completed by her licensed provider.

Plaintiff tried to inform the court that she had complied with the court orders, however none of it was considered. In less than 20 minutes, a Mother lost her 1-year-old baby, without any finding of unfitness, without cross-examination, without the right to be heard and without Indiana having jurisdiction. After custody was transferred, Plaintiff was denied all contact for more than 70 days, even though a court order granted supervised visitation through CAPS or an agreed third party. CAPS staff refused to schedule visits, later admitting they had been told by the judge and clerk's office not to do so. The father refused to allow any third-party visitation. No justification was ever provided. No court order ever suspended parenting time. Plaintiff is now limited to just six hours of visitation per month, on weekdays only, supervised at CAPS, at her own expense. She must drive over an hour each way, missing work and pulling children out of school. She is not allowed to whisper to her child. Her other children—his siblings— are prohibited from attending. Close to 100 CAPS visitation reports have been filed, each one describing bonding, affection, and emotional connection. Not a single one has documented a concern. Yet, no additional time has ever been granted. All requests for holidays, extended visits, family travel or reunification have been denied.

When Plaintiff attempted to follow the court's psychological evaluation order, she requested a more affordable provider or use of her existing therapist. The judge refused, requiring her to pay $2,500 to see a specific psychologist. When she complied, the psychologist recused himself after learning she was seeking legal advice—as he had advised. The judge responded by ordering an even more expensive evaluation, with another specific psychologist charging $4,000, again ignoring Plaintiff's completed report, insurance limitations, and financial hardship. The court made it clear that Mother would not be reunited with her son until she completed an evaluation by ONLY the doctor that the Judge chose.

The court even held her in contempt for allegedly failing to complete a drug test that was ordered while she was not present, and mailed to her after the deadline had already expired.

And now, Plaintiff has warrants for her arrest for nonpayment of child support—on a child she is not allowed to see, whose custody was taken without legal cause, and for whom she never received support when she had custody. She cannot enter Indiana to visit her son without being arrested.

Plaintiff has experienced profound emotional, psychological, physical, and financial trauma as a result of Defendants' conduct. She has effectively become a surrogate mother to her own biological child—carrying him, delivering him, raising him for his first year—and then having him taken without legal cause, without an evidentiary hearing, and without findings of unfitness or of best interest factors. Her other children have been forced to grieve the living loss of their baby brother, who they are no longer allowed to see. Plaintiff's entire household has been destabilized. She has incurred tens of thousands of dollars in financial harm—due to lost wages, attorney fees, therapy, supervised visitation costs, travel expenses, and being forced to defend herself against legally void and unconstitutional child support enforcement. This case is not just about a parent's rights. It is about a child's right to his mother, to his siblings, and to a family that has fought desperately to remain whole. In her effort to restore her son's right to his mother, siblings, and family, Plaintiff has exhausted every legal remedy available under Indiana law. She has filed:

A Motion to Reconsider Parenting Time

A Motion to Reconsider the Psychological Evaluation

An Appeal

A Petition to Transfer to the Indiana Supreme Court

A Motion to Modify Child Custody

After uncovering the jurisdictional fraud on her own, after her Motion to Modify child custody hearing was held in the Title IV-D court. Plaintiff then filed:

A Motion to Dismiss for Lack of Subject Matter

Jurisdiction

A Motion to Reconsider Dismissal

A Motion to Stay Proceedings

A Motion to Register the Michigan AOP

None of these filings were granted. The court has never issued Findings of Fact and Conclusions of Law, on any of its orders, as required by Indiana law, and never evaluated best interest factors. The court has never made a legal declaration of jurisdiction under the UCCJEA. Every attempt by Plaintiff to follow the law has been blocked, ignored, or punished. At every turn, the Indiana court has used her filings not as invitations to correct injustice, but as triggers for retaliation.

Plaintiff also filed a Motion to Recuse Judge David Bonfiglio after he released a public statement defending GAL Mary Raatz. This was in response to a televised ABC57 News investigation—an investigation that featured Plaintiff's case and at least three other families who experienced similar harm in Elkhart County by Judge Bonfiglio and Mary Raatz. GAL Mary Raatz has since been removed from all cases in Elkhart County. Despite widespread community outrage, including a Facebook group with over 400 members calling for oversight, Judge Bonfiglio refused to recuse himself. He continued to preside over Plaintiff's case and issue custody and enforcement orders, even though he was a central figure in the very misconduct being challenged. His continued presence on the case further eroded Plaintiff's ability to pursue reunification and access justice.

## DESCRIPTION OF DEFENDANTS

### Judge David C. Bonfiglio

At all relevant times, Judge Bonfiglio was a judicial officer in Elkhart Superior Court 6. He acted under color of state law. Plaintiff sues him in his individual and official capacities for knowingly issuing custody,

contempt, and supervised visitation orders without subject matter jurisdiction, adopting unlawful GAL recommendations, refusing to recuse himself after publicly defending the GAL in a televised news investigation, and denying Plaintiff the opportunity to present evidence, accommodations, or testimony at critical hearings. He facilitated the removal of an infant from his mother and siblings without evidence, hearing, or legal cause.

Named In:

- • Count I – Substantive Due Process
- • Count II – Procedural Due Process
- • Count IV – Conspiracy to Violate Civil Rights
- • Count VI – Retaliation for Protected Conduct
- • Count VII – Monell Liability
- • Count VIII – Fraud on the Court
- • Count IX – Family Unity and Equal Protection
- • Count X – Abuse of Process
- • Count XII – IIED
- • Count XIII – Civil Conspiracy


**Referee James N. Fox**

At all relevant times, Referee Fox presided over Title IV-D proceedings in Elkhart County and acted under color of law. Plaintiff sues him for conducting custody and contempt hearings in a court without jurisdiction, ignoring federal law, ADA requests, and procedural due process. Fox issued support and custody rulings while jurisdictional challenges were pending, and dismissed Plaintiff's disability claims on the record with bias and animus.

Named In:

- • Count I – Substantive Due Process

- • Count II – Procedural Due Process

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XIII – Civil Conspiracy


**Mary Raatz**

Raatz acted as a GAL without meeting statutory qualifications under Indiana law. She acted under color of state law and is sued individually. Raatz issued custody altering recommendations without investigation, failed to review evidence, refused to meet Plaintiff, Father or the child, and knowingly misrepresented facts in her report. She obstructed reunification, ignored Plaintiff's ADA-protected mental health records, and recommended restrictions despite no evidence of harm or unfitness.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Thomas Stipp**

Stipp represented Brent Fifer and acted jointly with state officials. He contacted a drug testing facility and instructed them not to submit Plaintiff's test, causing false findings of noncompliance. He advocated for the use of a void statute to gain jurisdiction, contributed to ADA discrimination, and colluded with the GAL to misrepresent facts in court.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count V – Full Faith & Credit / UCCJEA / PKPA

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Brent Fifer Jr.**

Fifer is the child's father. Though a private individual, he acted jointly with state actors. He filed a paternity petition under an Indiana statute inapplicable to the child, waived his right to a hearing to establish paternity by signing the properly executed Michigan AOP, but then filed a Verified Petition to Establish Paternity in Indiana, in order to unlawfully assert jurisdiction in his domicile state of Indiana. refused to allow visitation despite a court order and participated in fraudulent jurisdictional proceedings. He admitted knowing about Plaintiff's PTSD diagnosis yet used it to justify custody deprivation without legal basis. He aided in the prolonged separation of Plaintiff and her infant, causing constitutional harm.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count V – Full Faith & Credit / UCCJEA / PKPA

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Heather Schuetz**

Schuetz served as Director of Supervised Visitation at CAPS. She acted under color of law in denying Plaintiff's visitation for over 70 days based on court communication, despite an active court order

authorizing supervised visits. Her actions contributed to the unlawful deprivation of contact between a mother and infant, retaliation, and obstruction.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy


**Lashell Brown**

Brown was employed at CAPS and coordinated visitations.

She acted under color of law by refusing to schedule visits, ignoring Plaintiff's attorneys formal request to schedule visitation, misrepresenting the status of court orders and ignoring Plaintiff's ADA requests. She contributed to prolonged separation, emotional distress, and institutional discrimination.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Lisa Brown**

Lisa Brown served as the Director of the Elkhart County Pretrial Diversion Program. She reinstated Plaintiff's prosecution after Plaintiff had completed her service, paid all fees, and followed program terms. Her actions, taken under color of law, were retaliatory and discriminatory. She escalated Plaintiff's charges despite receiving documentation of compliance and directly contributed to Plaintiff's emotional distress, financial harm, and constitutional deprivation.

Named In:

- • Count II – Procedural Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XI – Malicious Prosecution

- • Count XII – IIED
- • Count XIII – Civil Conspiracy

**Joel Williams**

Williams, as Chief Deputy Prosecutor of Elkhart County, knowingly supported custody and child support proceedings without jurisdiction. He signed filings that misrepresented the legal basis for Indiana's authority, advanced retaliation, and ignored procedural safeguards.

He is liable under federal and state law.

Named In:

Count I – Substantive Due Process

Count II – Procedural Due Process

- Count IV – Conspiracy to Violate Civil Rights

- Count V – Full Faith & Credit / UCCJEA / PKPA

- Count VI – Retaliation for Protected Conduct

- Count VII – Monell Liability

- Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XI – Malicious Prosecution

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Eric Blackman**

Blackman, a Deputy Prosecutor, was present at hearings where Plaintiff's due process and ADA rights were violated. He supported and failed to intervene in prosecutions and custody actions that lacked jurisdiction and were rooted in retaliatory motives. His inaction contributed to Plaintiff's trauma and family separation. Named In:

- • Count I – Substantive Due Process
- • Count II – Procedural Due Process
- • Count IV – Conspiracy to Violate Civil Rights
- • Count V – Full Faith & Credit / UCCJEA / PKPA
- • Count VI – Retaliation for Protected Conduct
- • Count VII – Monell Liability
- • Count VIII – Fraud on the Court
- • Count IX – Family Unity and Equal Protection
- • Count X – Abuse of Process
- • Count XI – Malicious Prosecution
- • Count XII – IIED
- • Count XIII – Civil Conspiracy

**Christopher Anderson**

Anderson served as Clerk of Court or acted on behalf of the Clerk's Office. He failed to register the Michigan AOP, misrepresented jurisdictional filings. He acted under color of law and contributed to the systemic obstruction of Plaintiff's parental rights.

Named In:

- • Count I – Substantive Due Process

- • Count II – Procedural Due Process

- • Count IV – Conspiracy to Violate Civil Rights

- • Count V – Full Faith & Credit / UCCJEA / PKPA

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XIII – Civil Conspiracy

**Elkhart County, Indiana**

Elkhart County is liable under Monell for the customs, policies, or failures to train and supervise officials that resulted in widespread constitutional violations, ADA discrimination, and fraud on the court. The County allowed GAL appointments without oversight, enforced custody orders without jurisdiction, and retaliated against Plaintiff for protected activity.

Named In:

- • Count I – Substantive Due Process

- • Count II – Procedural Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count V – Full Faith & Credit / UCCJEA / PKPA

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XI – Malicious Prosecution

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Hannah Musgraves (Superior Court 6 Clerk)**

Hannah was an employee of the Elkhart County Clerk's Office who communicated with CAPS regarding Plaintiff's visitation. She informed CAPS that Plaintiff's visits could not be scheduled, allegedly at the direction of the judge. She acted under color of law by interfering with a valid court order and causing prolonged separation between Plaintiff and her child.

Named In:

- • Count I – Substantive Due Process

- • Count II – Procedural Due Process

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count VIII – Fraud on the Court

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Dr. Warren Sibilla**

Dr. Sibilla was court-appointed to conduct a psychological evaluation of Plaintiff. After Plaintiff retained

counsel, he recused himself from the case and declined to perform the evaluation. Despite this, his

involvement was repeatedly mischaracterized by other defendants to justify restrictions on parenting time.

Plaintiff was punished for noncompliance with his evaluation despite his own withdrawal, contributing to

ADA discrimination and psychological harm.

Named In:

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VIII – Fraud on the Court

- Count IX – Family Unity and Equal Protection

- Count XII – IIED

- Count XIII – Civil Conspiracy


**Sumaita Hassan**

Sumaita Hassan is a Deputy Prosecutor for Elkhart County who reactivated a criminal prosecution against Plaintiff after she had completed her diversion program requirements. Hassan acted under color of law in continuing a prosecution that lacked probable cause and was grounded in jurisdictionally void orders. Her actions constitute retaliation, malicious prosecution, and ADA discrimination.

Named In:

- • Count II – Procedural Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XI – Malicious Prosecution

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

**Rebecca Shetler-Fast**

Rebecca Shetler-Fast served as the CEO of CAPS during the relevant period. She acted under color of law through her role in enforcing CAPS policies and supervising staff who denied Plaintiff visitation and failed to accommodate her disability. She is responsible for organizational oversight of CAPS' participation in ADA discrimination, visitation obstruction, and unequal treatment of Plaintiff and her family.

Named In:

- • Count I – Substantive Due Process
- • Count III – Disability Discrimination
- • Count IV – Conspiracy to Violate Civil Rights
- • Count VI – Retaliation for Protected Conduct
- • Count VII – Monell Liability
- • Count IX – Family Unity and Equal Protection
- • Count X – Abuse of Process
- • Count XII – IIED
- • Count XIII – Civil Conspiracy

**Brandie Yoder**

Brandie Yoder was the CAPS supervisor for Heather Schuetz and Lachelle Brown. She acted under color of law in managing CAPS staff and supervising the practices that blocked court-ordered visitation, denied accommodations, and contributed to the prolonged separation between Plaintiff and her son. As a supervising official, she bears responsibility for failures to intervene, correct, or report ADA violations and family separation caused by CAPS actions.

Named In:

- • Count I – Substantive Due Process

- • Count III – Disability Discrimination

- • Count IV – Conspiracy to Violate Civil Rights

- • Count VI – Retaliation for Protected Conduct

- • Count VII – Monell Liability

- • Count IX – Family Unity and Equal Protection

- • Count X – Abuse of Process

- • Count XII – IIED

- • Count XIII – Civil Conspiracy

# COUNT I – VIOLATION OF SUBSTANTIVE DUE PROCESS (RIGHT TO FAMILY INTEGRITY)

## Legal Basis

The Due Process Clause of the Fourteenth Amendment protects a parent's fundamental right to the care, custody, and companionship of their child. That right cannot be infringed unless the parent is found unfit through a fair process, supported by evidence.

The U.S. Supreme Court has repeatedly held that state officials may not sever the parent-child relationship without due process and without a compelling reason such as abuse, neglect, or unfitness (Troxel v. Granville, 530 U.S. 57 (2000); Santosky v. Kramer, 455 U.S. 745 (1982)).

## Defendants Involved

- Judge David C. Bonfiglio

- Mary Raatz (GAL)

- Hannah Musgraves (Court Clerk)

- Brent Fifer Jr. (private actor enforcing unconstitutional process)

- Heather Schuetz (CAPS)

- Lashell Brown (CAPS)

- Dr. Warren Sibilla

- Referee James Fox

- Elkhart County (Monell liability)

## Factual Allegations

1. Plaintiff is the biological mother of a child born in Michigan, who lived with her and his siblings during the entire first year of his life.

2. There was no state welfare case, no finding of abuse, neglect, or unfitness. DCS conducted an investigation and found no concerns.

3. At the July 20, 2023 hearing, Plaintiff's child was taken from her—without an evidentiary hearing, without witnesses, without cross-examination, and without consideration of best interest factors.

4. The judge acted solely on a motion to implement the recommendation of GAL Mary Raatz, who had never met Plaintiff, her child, or her family. She conducted no investigation and does not meet the legal qualifications to serve as GAL in Indiana.

5. Plaintiff had already completed a psychological evaluation, scheduled an appointment with Dr. Sibilla, and passed a hair follicle drug test. These facts were never considered.

6. After the July 20, 2023 hearing, Plaintiff was denied all contact with her son for more than 70 consecutive days—even though a valid court order granted her supervised visitation. CAPS staff refused to schedule visits after being instructed by the judge and/or the clerk's office not to do so. The father also refused to allow third-party visitation, even though it was permitted by the order. No justification or written suspension was ever issued.

7. During this period, Plaintiff was completely severed from her infant son. Her other children—his siblings—were also prevented from seeing him. The child was not allowed to visit during holidays or family events, and all communication was blocked for over 2 months. This created extreme psychological trauma for Plaintiff and her children.

8. CAPS documented close to 100 supervised visits between Plaintiff and her son with no concerns, yet parenting time remained restricted. Requests for expanded time or holidays were routinely denied.

9. These actions caused severe emotional and psychological harm to Plaintiff, her son, and her family unit.

## Legal Conclusion

Defendants, acting under color of state law—and in concert with a private actor (Brent Fifer Jr.)—violated Plaintiff's fundamental right to the care and companionship of her child. The child was removed and contact was obstructed without jurisdiction, without cause, and without legal process. These acts amount to a constructive termination of parental rights in violation of clearly established law.

## Relief Requested

Plaintiff seeks:

- Declaratory judgment that the custody order and denial of contact were unconstitutional and void;

- Immediate injunctive relief restoring access and initiating reunification;

- General and compensatory damages for emotional distress and familial separation;

- Punitive damages for willful misconduct by individual actors;

- Costs and attorneys' fees under 42 U.S.C. § 1988.

## COUNT II – VIOLATION OF PROCEDURAL DUE PROCESS
42 U.S.C. § 1983 | Fourteenth Amendment – U.S. Constitution

### Legal Basis
The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." Procedural due process requires, at a minimum: advance notice, a meaningful opportunity to be heard, an impartial tribunal, and an opportunity to present and rebut evidence before government action deprives a person of fundamental rights.

This includes parental rights, which are protected as a liberty interest under Morrissey v. Brewer, Mathews v. Eldridge, and Santosky v. Kramer. Custody decisions must be made through evidentiary hearings, with full procedural safeguards.

### Defendants Involved
- Judge David C. Bonfiglio

- Mary Raatz (GAL)

- Clerk of Court (Jane Doe)

- Brent Fifer Jr. (coordinated enforcement of orders obtained without process)

- Heather Schuetz (CAPS)

- Lachelle Brown (CAPS)

- Deputy Prosecutor Sumaita Hassan

- Lisa Brown (Diversion Coordinator)

- Referee James Fox

- Elkhart County (under Monell liability)

## Factual Allegations

1. Plaintiff was denied the opportunity to participate in the February 14, 2023 hearing, where initial custody and parenting time decisions were made. She was not present, was denied a continuance, and had no opportunity to present evidence or be heard.

2. At the July 20, 2023 hearing, the court transferred sole legal and physical custody of Plaintiff's child to the father. This hearing lasted approximately 18 minutes. No witnesses were called, no exhibits were admitted, and no best interest factors were analyzed.

3. The ruling was based entirely on the Guardian ad Litem's written report. The GAL—Mary Raatz—had never met the parties, never conducted an investigation, and is not legally qualified to serve under Indiana law.

4. Plaintiff had submitted documentation of compliance with court orders prior to the July hearing, including a negative hair follicle drug test, a scheduled evaluation with Dr. Sibilla, and a completed evaluation with her licensed mental health provider. None of this evidence was reviewed or entered into the record.

5. Plaintiff was held in contempt of court for allegedly failing to complete a drug test. However, the test was ordered while she was not present, and the notice was mailed after the expiration date for completion. She had no opportunity to comply.

6. Plaintiff attempted to satisfy the psychological evaluation requirement through a provider she could afford and trusted. The court rejected her evaluation, refused to accept any alternatives, and demanded she see a more expensive psychologist instead.

7. The court later enforced orders by issuing arrest warrants and contempt sanctions, even while jurisdictional challenges and motions were pending.

8. In the related criminal matter, Plaintiff was summoned to court using an outdated Indiana address, not served properly, and prosecuted for the same facts for which she had already been held in contempt—supporting a potential double jeopardy issue.

9. None of the custody or criminal orders were supported by Findings of Fact or Conclusions of Law. Indiana courts never held a UCCJEA hearing, never addressed jurisdiction, and refused to rule on multiple properly filed motions to dismiss.

## Legal Conclusion

Defendants, acting under color of state law, deprived Plaintiff of her fundamental liberty interest in parenting her child without notice, hearing, evidence, or meaningful opportunity to be heard. The process she was given amounted to no process at all.

The procedures used in Elkhart Superior Court 6, including blanket reliance on an unqualified GAL, summary orders without hearings, and enforcement of jurisdictionally defective rulings, violate clearly established procedural due process rights.

## Relief Requested

Plaintiff seeks:

- Declaratory judgment that custody, contempt, and criminal orders entered without proper due process are unconstitutional and void;

- Immediate injunctive relief staying enforcement of those orders;

- General damages for harm caused by the violations;

- Punitive damages for knowing disregard of Plaintiff's rights;

- Attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT III – DISABILITY DISCRIMINATION AND FAILURE

## TO ACCOMMODATE

42 U.S.C. § 1983 | Title II of the ADA (42 U.S.C. § 12132)

| Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

**Legal Basis**

Title II of the Americans with Disabilities Act (ADA) and Section 504

of the Rehabilitation Act prohibit public entities—including courts,

county agencies, and state contracted  visitation programs—from

discriminating against qualified individuals with disabilities or denying

them access to public services, programs, and activities because of their

disabilities. Covered entities must provide reasonable accommodations

and must not rely on stereotypes or create unjustified burdens for

participation.

To establish a violation, a plaintiff must show: (1) she is a qualified

individual with a disability; (2) she was excluded from participation in

or denied the benefits of a public entity's services or programs; (3) the

exclusion was due to her disability or failure to provide

accommodations.

**Defendants Involved**

- Judge David C. Bonfiglio

- Mary Raatz (GAL)

- Referee James Fox

- Clerk of Court (Jane Doe)

- Heather Schuetz (CAPS)

- Lachelle Brown (CAPS)

- Lisa Brown (Diversion Coordinator)

- Eric Blackman (Deputy Prosecutor)

- Elkhart County

**Factual Allegations**

1.    Plaintiff has a documented disability, including PTSD-and
medically diagnosed postpartum depression, for which she has
consistently received treatment through licensed mental health
providers. This qualifies her as a person with a disability under the
ADA and the Rehabilitation Act.

2.    GAL Mary Raatz, despite never meeting Plaintiff or her child,
claimed Plaintiff was 'out of touch with reality,' based solely on
Plaintiff's statement that the father was not supporting the child
financially. There was no psychological or evidentiary basis for this
conclusion.

3.    The court ordered Plaintiff to undergo a psychological
evaluation with a specific provider (Dr. Sibilla), disregarding her
completed evaluation by a treating provider. After Dr. Sibilla recused
himself, Plaintiff asked to use a covered provider. Her request was
denied. Judge Bonfiglio instead ordered her to Dr. Berardi, who
charged nearly $4,000.

4.    Parenting time was conditioned on completing the court
selected evaluation, despite Plaintiff's inability to pay, making the order
functionally impossible to comply with.

5.    Plaintiff requested accommodations to appear remotely due to
PTSD and disability-related barriers. These requests were ignored, and
she was later subjected to arrest warrants for failure to appear, even
after ADA accommodation notices were submitted.

6.    CAPS restricted Plaintiff's supervised visitation to 1 hour weekday visits only. All requests for accommodations, reunification, expanded time, or even schedule modifications were denied. This required Plaintiff to miss work and travel over an hour each way.

7.    CAPS prohibited video recording, whispering, or natural-bonding during visits. These overly restrictive conditions exacerbated Plaintiff's PTSD, impaired visitation quality, and served no legitimate purpose, as nearly 100 positive visit reports had been filed without incident. 8. CAPS staff, including Heather Schuetz and Lashell Brown confirmed that CAPS has no ADA policies for nonDCS parents and refused to provide Plaintiff with records or policies unless subpoenaed.

9.    DOJ guidance confirms that state actors must not deny-custody or parenting rights based on disability and must accommodate parental needs. Defendants failed to conduct an individualized assessment of Plaintiff's condition and relied instead on stereotypes and procedural obstacles.

10.    Eric Blackman, present at all key hearings, failed to intervene or advocate for Plaintiff's rights despite knowing of her ADA status and her pending requests for court access and visitation-related relief.

**Legal Conclusion**

Defendants' actions—individually and collectively— constitute unlawful disability discrimination and failure to provide reasonable accommodations in violation of: - Title II of the Americans with Disabilities Act (42 U.S.C. § 12132),

- Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and 42 U.S.C. § 1983.

Defendants denied Plaintiff equal access to parenting time, court hearings, and reunification opportunities. They imposed unjustified burdens based on her disability, failed to consider existing medical evaluations, and obstructed her ability to meaningfully participate in parenting and legal processes.

**Relief Requested**

Plaintiff seeks:

- Declaratory judgment that Defendants violated her rights under the ADA and Rehabilitation Act;

- Injunctive relief to eliminate discriminatory conditions and enforce accommodations for visitation and court access;

- Compensatory damages for emotional distress, financial-loss, and harm to family integrity;

- Punitive damages for willful and knowing misconduct;- Attorneys' fees and costs under 42 U.S.C. § 12205 and 42 U.S.C. § 1988.

**COUNT IV: 42 U.S.C. § 1983 – CONSPIRACY TO VIOLATE CIVIL RIGHTS**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants Judge David C. Bonfiglio, Referee James N. Fox, Brent Fifer Jr., Thomas Stipp, Eric Blackman, Mary Raatz, Lisa Brown, Sumaita Hassan, Heather Schuetz, Lashell Brown, Brandie Yoder, Rebecca Shetler-Fast, and Hannah Musgraves, entered into a concerted scheme under color of law to deprive Plaintiff of her constitutional rights. This included deliberate coordination to obstruct visitation, suppress evidence, fabricate claims of non-compliance, and deprive Plaintiff of procedural due process and access to the courts. The conspiracy was furthered by:

- Ex parte communications between the GAL, court staff, Dr, Sibilla and the visitation center to unlawfully block Plaintiff's court-ordered supervised parenting time;

- Retaliatory court orders designed to financially burden. Plaintiff with unjustified psychological evaluations;

- Repeated refusal to consider Plaintiff's evidence of compliance, including negative drug tests and completed mental health evaluations; refusal to give Mother an individual assessment based on her temporary diagnosis of Postpartum Depression, an illness caused by child birth.

- Failure to investigate or acknowledge evidence that undermined Defendants' narrative, including unsubstantiated DCS reports and medical diagnoses from licensed professionals.

- Clerk Hannah Musgraves knowingly participated in the conspiracy by instructing CAPS not to schedule visits, despite an active court order for supervised parenting time. At a September 19, 2023

hearing, GAL Mary Raatz testified under oath that the reason CAPS blocked visits was due to instructions from the clerk's office. Judge Bonfiglio himself admitted no such order existed and claimed no recollection of directing CAPS to block Plaintiff's visits.

Despite this, visits continued to be blocked through a coordinated scheme involving Musgraves, CAPS supervisors, and the GAL. This violated Plaintiff's right to family association and constitutes unlawful retaliation, obstruction of justice, and conspiracy under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests that this Court enter judgment against all Defendants under Count IV, jointly and severally, for compensatory and punitive damages, declaratory relief, and such other relief as the Court deems just and proper.

## COUNT V – VIOLATIONS OF THE FULL FAITH AND CREDIT CLAUSE, UCCJEA, AND PKPA

42 U.S.C. § 1983 | U.S. Constitution Article IV, § 1 | 28

U.S.C. § 1738A (PKPA)

**Legal Basis**

The Full Faith and Credit Clause of the U.S. Constitution (Art. IV, § 1) requires states to honor the public

acts, records, and judicial proceedings of other states. The Parental Kidnapping Prevention Act (PKPA), 28

U.S.C. § 1738A, and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) require:

-       That custody determinations be made in the child's home state;

-       That jurisdiction must be established before a court canenter custody orders;

-       That one state must defer to custody determinations madeby another state with proper jurisdiction.

Once a custody determination is made or acknowledged in a child's home state, other states may not modify

or override it unless the legal standards for transfer are met.

**Defendants Involved**

-       Judge David C. Bonfiglio

-       Clerk of Court (Jane Doe)

-       Joel Williams (Deputy Prosecutor)

-       Christopher Anderson (Clerk)

-       Eric Blackman (Deputy Prosecutor)

-       Referee James Fox

-       Mary Raatz (GAL)

-       Elkhart County

**Factual Allegations**

1.      Plaintiff's child was born in Kalamazoo County,Michigan. Both parents executed a valid Michigan Acknowledgment of Parentage (AOP), which, under Michigan law, legally established paternity and granted initial custody to the mother.

2.      The father, Brent Fifer Jr., filed a Verified Petition to

Establish Paternity in Elkhart County, Indiana, under Indiana Code § 16-37-2-2.1, which applies only to children born in Indiana. This statute was used to bypass the registration and recognition of the Michigan AOP. 3. The child had not lived in Indiana for six months prior to the filing. At the time of filing, Plaintiff and her son were legal residents of Michigan. Indiana was not the child's home state under the UCCJEA.

4.      A Title IV-D case was initiated in Michigan in July 2022,and a UCCJEA affidavit was filed in that proceeding. Indiana never filed a UCCJEA affidavit, nor held a hearing to determine subject matter jurisdiction.

5.      By using Indiana's paternity statute to re-establish paternity using Michigan's already-executed affidavit— rather than registering it—the father gained unlawful access to Indiana's custody and child support system.

6.      Indiana has never legally established paternity under its own laws, as it never formally registered the Michigan AOP or held a lawful paternity hearing.

7.      Defendants Joel Williams, Christopher Anderson, Hannah Musgraves, and Eric Blackman facilitated the entry and enforcement of custody and support orders without verifying legal paternity in Indiana and without jurisdictional findings.

8.      Plaintiff filed multiple objections and motions, including a Motion to Dismiss for Lack of Jurisdiction, Motion to Reconsider, and Motion to Stay, but these were denied or ignored. The Indiana court continued to assert custody and support control without legal authority.

9.      Referee James Fox enforced orders related to custody and child support inside Title IV-D court, despite that court lacking subject matter jurisdiction under Indiana and federal law. GAL Mary Raatz issued custody recommendations despite jurisdiction being improper, and without conducting a lawful investigation.

**Legal Conclusion**

Defendants knowingly entered and enforced custody and support orders in violation of: - The Full Faith and Credit Clause,

-       The Parental Kidnapping Prevention Act (PKPA), and- The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).

These violations deprived Plaintiff of federally protected rights and enabled the unlawful transfer of custody and support jurisdiction to Indiana. The resulting orders are void.

**Relief Requested**

Plaintiff seeks:

-       Declaratory judgment that the Indiana court orders are void for lack of jurisdiction;

-       Injunctive relief prohibiting enforcement of custody and support orders entered in violation of federal law;

-        Damages for harm caused by the unlawful enforcement and deprivation of contact with her child;

-       Attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VI – RETALIATION FOR PROTECTED CONDUCT

42 U.S.C. § 1983 | First and Fourteenth Amendments –

U.S. Constitution

**Legal Basis**

The First Amendment protects individuals from retaliation by state actors for engaging in constitutionally protected speech, including petitioning the courts, speaking publicly about public officials, reporting misconduct, and filing grievances or lawsuits. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show: (1) she engaged in protected conduct; (2) defendants took adverse action against her; and (3) there was a causal connection between the protected conduct and the adverse action. Retaliation by state officials that chills constitutional rights or punishes the exercise of protected speech is presumptively unconstitutional.

**Defendants Involved**

- Judge David C. Bonfiglio

- Mary Raatz (GAL)

- Hannah Musgraves (Clerk)

- Heather Schuetz (CAPS)

- Lashell Brown (CAPS)

- Lisa Brown (Diversion)

- Sumaita Hassan (Deputy Prosecutor)

- Referee James Fox

- Eric Blackman (Deputy Prosecutor)

- Elkhart County

**Factual Allegations**

1.      Plaintiff engaged in constitutionally protected activities including: filing court motions and jurisdictional challenges, requesting ADA accommodations, reporting misconduct by court officials, commenting publicly on a government Facebook post, and participating in a televised ABC 57 News investigation highlighting systemic family court abuse.

2.      Following her public criticism and court filings, Plaintiff's parenting time was blocked for more than 70 consecutive days despite an active court order permitting visitation. CAPS later admitted the suspension was based on instructions from the judge and/or court clerk.

3.      After completing a diversion program, (Mother was charged with withholding parenting time from Father, infant was only 6 months old and Mother was looking out for the child's best interest. Plaintiff was re- prosecuted for the same conduct. Lisa Brown and Sumaita Hassan altered the program terms and pursued criminal charges in apparent retaliation for Plaintiff's legal advocacy and public exposure.

4.      Plaintiff's requests to appear remotely due to PTSD were denied. She was issued an arrest warrant for failing to appear in person—despite submitting formal ADA accommodation requests.

5.      CAPS imposed excessively restrictive visitation conditions, including weekday-only sessions  and bans on whispering or video. Plaintiff requested reunification and was denied, she was told those services are only afforded to DCS or CHINS cases.  After Plaintiff challenged these conditions, staff refused to respond to her inquiries or provide relevant program policies.

6.      Referee Fox and Prosecutor Blackman continued to enforce contempt and support orders while jurisdictional objections were pending. Blackman actively participated in proceedings where Plaintiff's constitutional objections and disability rights were raised.

7.      Defendants' actions escalated after Plaintiff began filing detailed legal objections and participating in news coverage, showing a pattern of retaliatory enforcement and procedural stonewalling.

8.      Plaintiff was treated differently than the child's father, who was not required to undergo psychological evaluation, attend supervised visits, or face contempt for similar conduct. Plaintiff's assertive advocacy was met with punitive retaliation rather than neutral enforcement.

**Legal Conclusion**

Defendants, acting under color of state law, took adverse actions against Plaintiff in retaliation for her exercise of First Amendment rights. These actions included denial of visitation, re-prosecution, contempt threats, denial of accommodations, and enhanced restrictions on her parenting access.

This retaliatory conduct violated Plaintiff's constitutional rights under the First and Fourteenth Amendments and constitutes unlawful retaliation under 42 U.S.C. § 1983.

**Relief Requested**

Plaintiff seeks:

-       Declaratory judgment that Defendants retaliated against her for protected speech and advocacy; - Injunctive relief preventing further retaliation and compelling reasonable accommodation; - Compensatory damages for emotional distress, reputational harm, and lost access to her child; - Punitive damages against individual actors for intentional misconduct;

-       Attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VII – MUNICIPAL LIABILITY UNDER MONELL

### 42 U.S.C. § 1983 | Fourteenth Amendment – U.S. Constitution

**Legal Basis**

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when a constitutional violation is caused by an official policy, custom, or failure to train or supervise that reflects deliberate indifference to federally protected rights. Liability attaches where a policy or custom is the moving force behind the constitutional deprivation. This includes systemic ADA failures, reliance on unqualified contractors, and jurisdictional abuses in custody enforcement.

**Defendant** Elkhart County

**Factual Allegations**

1.      Elkhart County is responsible for the supervision, funding, and oversight of Child and Parent Services (CAPS), the GAL appointment system, the Title IV-D court infrastructure, and county-employed or contracted personnel including prosecutors, diversion program administrators, and court clerks.

2.      CAPS operated without any ADA policy or visitation accommodations for non-DCS parents. CAPS supervisors admitted that visitation scheduling, case plans, and documentation were only structured for CHINS cases, leaving parents like Plaintiff without access to equitable services.

3.      GAL Mary Raatz was repeatedly assigned to family court cases despite lacking legal qualifications under Indiana law. She was not a licensed attorney, certified CASA volunteer, or court-employed GAL. Elkhart County delegated decision-making power to her without supervision, training, or legal authority.

4.    CAPS and the County continued to rely on GAL reports from Raatz even after Plaintiff submitted

formal complaints to judicial oversight agencies. State officials confirmed that Raatz was not a court

employee and not part of a qualified GAL program.

5.    CAPS and Elkhart County failed to implement reunification protocols or a review process for

non-DCS involved families. Plaintiff experienced an over 70-day period of no contact with her infant child,

with no reunification plan, caseworker oversight, or process to challenge the delay.

6.    CAPS refused to provide visitation documentation unless subpoenaed, denied Plaintiff access to her

own records, and failed to produce any internal guidelines. County actors upheld this obstruction, creating a

deliberate lack of transparency.

7.    Elkhart County permitted its judicial officers, prosecutors, and contracted entities to enforce custody

and support orders without first establishing legal paternity, filing UCCJEA affidavits, or conducting

jurisdictional hearings, and providing findings of facts and conclusions of law.  This practice became

routine, affecting Plaintiff and other families.

8.    Despite multiple complaints, public media exposure, and Plaintiff's request for policy

reform—including direct complaints to CAPS leadership and Indiana's judicial commission—no corrective

action was taken.

9.    Plaintiff attempted to contact the listed ADA coordinator for court access (Whitney) multiple times

by phone and email. The email bounced, and only after persistent follow up did Plaintiff learn there is no

designated ADA coordinator at all. There is no court ADA process for obtaining accommodations in Elkhart

County.

10.     A Facebook group titled 'Expose Mary Raatz' now has over 400 members. Multiple families have experienced nearly identical misconduct, and several are pursuing civil litigation. Yet Elkhart County has not reformed GAL practices or ADA compliance procedures.

11.     Plaintiff's motion to recuse Judge Bonfiglio was denied after he gave a public statement defending Mary Raatz on local news. Enforcement escalated afterward, showing tolerance for retaliation and refusal to acknowledge the public trust crisis.

**Legal Conclusion**

Elkhart County, through its policies, customs, and failures to train or supervise, caused and perpetuated the constitutional injuries described in this Complaint. These practices include:

-       Delegating custody power to unqualified GALs without supervision;

-       Maintaining a visitation contractor (CAPS) with no ADA framework for non-DCS parents;

-       Failing to provide equitable access, due process, and reunification plans;

-       Tolerating systemic misconduct despite overwhelming public, legal, and media complaints.

These customs reflect deliberate indifference to Plaintiff's rights and support Monell liability under 42 U.S.C. § 1983.

**Relief Requested**

Plaintiff seeks:

-       Declaratory judgment that Elkhart County's policies, customs, and omissions violated her constitutional rights;

-       - Injunctive relief requiring Elkhart County to adopt ADA compliant visitation policies, review GAL assignments, and train staff on jurisdictional and parental rights;

-       Compensatory damages for harm caused by county practices;

-        Attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VIII – FRAUD ON THE COURT

**42 U.S.C. § 1983 | Fourteenth Amendment Due Process | Inherent Judicial Integrity Doctrine Legal Basis**

Fraud on the court arises when officers of the court—such as judges, attorneys, GALs, or clerks—engage in conduct that prevents the judicial process from functioning fairly. This includes concealment of facts, misrepresentation of legal authority, or using deception to obtain jurisdiction or judicial outcomes.

When fraud undermines the integrity of the judicial process itself, it violates procedural and substantive due process under the Fourteenth Amendment and is actionable under 42 U.S.C. § 1983.

**Defendants Involved**

-        Judge David C. Bonfiglio

-        Mary Raatz (GAL)

-        Joel Williams (Deputy Prosecutor)

-        Christopher Anderson (Clerk)

-        Hannah Musgraves (Court Clerk)

-        Thomas Stipp (Attorney for Father)

-        Elkhart County

**Factual Allegations**

1.      Attorney Thomas Stipp contacted Plaintiff's court ordered testing facility and directed the staff NOT to submit her hair follicle drug test, despite Plaintiff appearing, completing the test, and paying for it. This action was recorded and acknowledged by the facility staff.

2.      At a subsequent hearing, Stipp falsely stated that Plaintiff had not completed the test, misleading the court and contributing to the removal of her child.

3.      The court relied on this false representation, despite no evidence to support it and a valid court order requiring the test. Plaintiff's compliance was knowingly concealed.

4.      Judge Bonfiglio issued custody and parenting orders based on this and other falsehoods, without an evidentiary hearing, without best interest factors, without findings, and despite knowing jurisdiction was in dispute.

5.      Mary Raatz submitted reports and recommendations while unqualified under Indiana law. She admitted under oath that she was not an attorney, volunteer, or county program employee as required under IC 31-9-2-50.

6.      Raatz never met Plaintiff, the father, or the child. She made recommendations without reviewing medical records, failed to maintain a GAL file, and ignored Plaintiff's formal evidence—including medical evaluations, court-ordered drug tests, and visitation records. Mary Raatz never met Mother, minor child or Father.

7.      The GAL's reports lacked required elements such as names and dates of contacts, summaries of interviews, or factual findings. Mary's recommendations were adopted as court orders without legal basis or

evidentiary support. She made comments about Mother's mental health at public hearings where she appeared remotely with camera off.

8.  Court clerks, including Hannah Musgraves, falsely claimed CAPS could not schedule court-ordered visitation, causing a 70+ day no-contact period. This was later confirmed to be based on non-existent court orders.

9.  Plaintiff filed a formal Motion to Recuse Judge Bonfiglio for bias, improper jurisdiction assignments, failure to protect due process, and public statements about the case. Despite these complaints, Bonfiglio continued to rule, reinforcing the perception of partiality.

10. The combination of actions—including use of an unqualified GAL, submission of false information, failure to disclose jurisdictional defects, and denial of ADA accommodations—constitutes a systemic breakdown of judicial integrity.

11. GAL Mary Raatz was appointed under IC 31-9-2-50 and IC 31-15-6, which require GALs to be attorneys, court volunteers, or employees of a county GAL program. Raatz was none of these. Despite lacking legal qualifications, she influenced the court's removal of Plaintiff's child without statutory authority.

12. A third-party observer, Emersen Earhart, who holds graduate-level GAL qualifications and works in family systems research, documented the July 20, 2023 hearing. She confirmed that no evidence or abuse allegations were presented and that Plaintiff's child was taken in under 15 minutes based solely on Raatz's personal opinion. Earhart also confirmed the court's hostility toward Plaintiff when she attempted to present documentation and that the court threatened to remove her in handcuffs.

13.     Plaintiff emailed GAL Raatz the day after the hearing, documenting that Attorney Thomas Stipp had called the testing facility and ordered Plaintiff's hair follicle drug test results to be withheld—despite her full compliance and payment. Raatz ignored this obstruction of a court order and continued to report Plaintiff as noncompliant.

14.     The court and CAPS staff concealed the existence of a valid visitation order for over 70 days. Internal CAPS emails revealed that they were instructed not to schedule visits and were waiting for judicial confirmation, even though no stay or suspension had been issued. This created a false appearance of Plaintiff's 'absence' and denied all contact with her infant son during that period.

15.     These actions show a coordinated effort by court appointed actors to misrepresent facts, block compliance, and conceal the truth from the court. Their omissions and falsehoods directly led to the removal of Plaintiff's child, ongoing denial of contact, and retaliation for asserting her rights.

**Legal Conclusion**

Defendants, as officers of the court and state actors, knowingly participated in acts of fraud that denied Plaintiff a fair hearing, violated her constitutional rights, and prevented the proper functioning of the judicial process. These acts constitute fraud on the court and are actionable under 42 U.S.C. § 1983 and the federal court's inherent authority to remedy judicial fraud.

**Relief Requested**

Plaintiff seeks:

-       Declaratory judgment that Defendants committed fraudon the court and violated Plaintiff's due process rights; - Vacatur of custody, support, and contempt orders issued based on fraudulent representations;

-       Compensatory damages for emotional, financial, andfamilial harm;

- Punitive damages for intentional deception by officers of the court;

- Attorneys' fees and costs under 42 U.S.C. § 1988.

.

## COUNT IX – VIOLATION OF FUNDAMENTAL RIGHTS TO FAMILY UNITY AND EQUAL PROTECTION

42 U.S.C. § 1983 | Fourteenth Amendment – Substantive Due Process & Equal Protection Clauses

**Legal Basis**

The Fourteenth Amendment to the U.S. Constitution protects the fundamental liberty interest of parents in the care, custody, and companionship of their children. State actors may not interfere with that right without cause, due process, and equal protection of the laws. Courts must apply custody and parenting standards consistently and without discrimination or retaliation. Government officials also may not treat similarly situated individuals differently without a rational basis, nor impose greater burdens on parents based on protected characteristics or conduct.

**Defendants Involved**

- Judge David C. Bonfiglio

- Referee James Fox

- Mary Raatz (GAL)

- Heather Schuetz (CAPS)

- Lashell Brown (CAPS)

- Lisa Brown (Diversion)

- Thomas Stipp (Attorney for Father)

- Eric Blackman (Deputy Prosecutor)

- Elkhart County

- Brent Fifer Jr. (Private actor working in concert with stateofficials) **Factual Allegations**

1.      Plaintiff was the primary caregiver of her son for the first year of his life. She raised him alongside his siblings. Plaintiff has been a mother for 20 years, with no history of abuse, neglect, or unfitness.

2.      Defendants deprived Plaintiff of custody and all meaningful contact with her child without cause, without evidence, and without an evidentiary hearing. The removal was based on a GAL recommendation by someone who never met the child or parents, and was not qualified under Indiana law to serve.

3.      Plaintiff was denied the right to participate in critical hearings, denied the right to present evidence, and was retaliated against for asserting her rights under the Constitution, the ADA, and federal custody laws.

4.      Defendant court officers told CAPS to block all court ordered visitation for over 70 days, contributing to severe trauma and separation between the child, his mother, and his siblings. The underlying order was never vacated, stayed, or suspended.

5.      CAPS enforced hyper-restrictive visitation policies that allow no more than 6 hours a month, prohibit recording, whispering, and holiday or weekend visits—policies not applied equally to all parents, and enforced more strictly against Plaintiff due to her protected disability.

6.      Plaintiff was held to a higher standard of compliance than the child's father, despite never being found unfit. The father was not required to undergo psychological evaluation, was not required to show proof of drug testing, and was allowed to ignore the Michigan AOP without consequence.

7.       No rational basis existed to treat Plaintiff differently than the child's father or other non-disabled, non-complaining parents. This difference in treatment was motivated by animus, retaliation, and systemic bias.

8.      The cumulative effect of these actions deprived Plaintiff of her fundamental right to family unity, caused permanent damage to the mother-child relationship, and violated her right to equal protection of the law.

9.       Plaintiff currently has no legal rights to her son. She is not permitted to attend his daycare, access his medical records, attend appointments, or participate in any aspect of his care—effectively terminating her parental rights without a court finding of unfitness or due process.

**Legal Conclusion**

Defendants violated Plaintiff's constitutional rights by severing her relationship with her child without legal justification, without a finding of unfitness, and without affording her equal treatment. The unequal enforcement of parenting obligations, denial of participation in the legal process, and treatment based on disability and protected speech violate the Fourteenth Amendment's guarantees of family integrity and equal protection.

**Relief Requested**

Plaintiff seeks:

-       Declaratory judgment recognizing that her fundamental rights were violated;

-       Injunctive relief restoring access to her child and prohibiting discriminatory enforcement of custody and parenting orders;

-       Compensatory and punitive damages for constitutional harm and familial loss;

-       Attorneys' fees and costs under 42 U.S.C. § 1988.

.

## X  ABUSE OF PROCESS

**(Indiana State Law) Legal Basis**

Under Indiana law, a claim for abuse of process arises when: (1) the defendant used legal process in a manner not proper in the regular course of the proceedings, and (2) the defendant used that process to accomplish an ulterior or illegitimate purpose. It is not necessary to show that the entire process was void—only that it was used for coercive or retaliatory aims inconsistent with its intended purpose.

**Defendants Involved**

- Judge David C. Bonfiglio

- Referee James Fox

- Mary Raatz (GAL)

- Joel Williams (Deputy Prosecutor)

- Eric Blackman (Deputy Prosecutor)

- Thomas Stipp (Attorney for Father)

- Heather Schuetz (CAPS)

- Lashell Brown (CAPS)

- Elkhart County

**Factual Allegations**

1.      Defendants misused court procedures, including motions, contempt hearings, psychological evaluation orders, and supervised visitation restrictions, to punish and silence Plaintiff rather than to serve any legitimate legal purpose.

2.      Judge Bonfiglio, Referee Fox, and Prosecutors Blackman and Williams continued contempt and support enforcement despite jurisdictional objections and Plaintiff's documented ADA status.

3.      Plaintiff was re-prosecuted for criminal interference with custody even after completing a diversion program. The terms were changed and misrepresented, revealing an ulterior retaliatory motive.

4.      GAL Mary Raatz submitted reports without qualification, investigation, or basis in fact, and repeatedly misrepresented Plaintiff's mental health, parenting ability, and compliance.

5.      Attorney Thomas Stipp instructed a court-ordered drug testing facility not to submit Plaintiff's completed test, sabotaging her ability to comply and leading to custody loss.

6.      CAPS staff, acting under direction, blocked Plaintiff's Visitation despite a valid court order. They falsely claimed visits could not be scheduled and later admitted they were waiting on instructions from the judge or court.

7.      These actions were taken not to protect the child or administer justice, but to retaliate against Plaintiff for asserting her legal rights, objecting to jurisdiction, and exposing misconduct.

8.      The legal process was distorted into a tool of control and coercion, violating its intended use and damaging Plaintiff's parental rights and family integrity.

**Legal Conclusion**

Defendants misused the legal process to carry out improper and retaliatory objectives. Their actions caused significant harm to Plaintiff and violated Indiana's common law standards for abuse of process.

**Relief Requested**

Plaintiff seeks:

-       Compensatory damages for harm caused by misuse of legal proceedings;

-       Punitive damages to deter similar misconduct in the future;

-       Attorneys' fees and costs as permitted by Indiana law;- Any other relief this Court deems just and proper.

## XI MALICIOUS PROSECUTION

**(Indiana State Law – Against Lisa Brown, Sumaita Hassan, Joel Williams,**

**Eric Blackman, and Elkhart County)**

**Legal Basis**

Under Indiana law, a plaintiff may bring a claim for malicious prosecution by showing that: (1) the defendant initiated or continued a criminal proceeding against the plaintiff; (2) the proceeding lacked probable cause; (3) it was pursued with malice; and (4) the plaintiff suffered harm as a result.

**Factual Allegations**

1.     On March 17, 2023, Plaintiff was charged with Interference with Custody under I.C. § 35-42-3-4(b)(2), based on an alleged violation of a custody order entered in Elkhart Superior Court 6. That order was void for lack of jurisdiction.

2.     Plaintiff accepted and complied with the Elkhart County Pre-Trial Diversion Program, performing community service for MMC Dance Team Inc. and paying all required fees.

3.     Despite this, Lisa Brown and Deputy Prosecutor Sumaita Hassan reinstated prosecution, falsely claiming Plaintiff failed to comply with diversion terms, even after Plaintiff provided documentation.

4.     The reinstatement occurred after Plaintiff had begun asserting federal rights, filing motions to dismiss for lack of jurisdiction, and requesting ADA accommodations.

5.     CAPS and court personnel had blocked Plaintiff's parenting time before the alleged violation, yet prosecutors pursued the charge as if she intentionally denied contact.

6.     Prosecutors refused to allow remote hearings despite ADA requests and denied all motions to vacate or reconsider, then issued a bench warrant when Plaintiff failed to appear in person.

7.     The prosecution continued in retaliation for Plaintiff's protected conduct and with full awareness that the underlying custody orders were being actively challenged. 8. Plaintiff suffered public embarrassment, emotional distress, and further family separation as a result of this baseless prosecution.

## COUNT XI – MALICIOUS PROSECUTION

**(Indiana State Law – Against Lisa Brown, Sumaita Hassan, Joel Williams, Eric Blackman, and Elkhart County)**

**Legal Basis**

Under Indiana law, a plaintiff may bring a claim for malicious prosecution by showing that:

(1) the defendant initiated or continued a criminal proceeding against the plaintiff;

(2) the proceeding lacked probable cause;

(3) it was pursued with malice; and

(4) the plaintiff suffered harm as a result.

**Factual Allegations**

1. On March 17, 2023, Plaintiff was charged with Interference with Custody under I.C. § 35-42-3-4(b)(2), based on an alleged violation of a custody order entered in Elkhart Superior Court 6. That order was void for lack of jurisdiction.

2. Plaintiff accepted and complied with the Elkhart County Pre-Trial Diversion Program, performing community service for MMC Dance Team Inc. and paying all required fees.

3. Despite this, Lisa Brown and Deputy Prosecutor Sumaita Hassan reinstated prosecution, falsely claiming Plaintiff failed to comply with diversion terms, even after Plaintiff provided documentation.

4. The reinstatement occurred after Plaintiff had begun asserting federal rights, filing motions to dismiss for lack of jurisdiction, and requesting ADA accommodations.

5. CAPS and court personnel had blocked Plaintiff's parenting time before the alleged violation, yet prosecutors pursued the charge as if she intentionally denied contact.

6. Prosecutors refused to allow remote hearings despite ADA requests and denied all motions to vacate or reconsider, then issued a bench warrant when Plaintiff failed to appear in person.

7. The prosecution continued in retaliation for Plaintiff's protected conduct and with full awareness that the underlying custody orders were being actively challenged.

8. Plaintiff suffered public embarrassment, emotional distress, and further family separation as a result of this baseless prosecution.

**Legal Conclusion**

Defendants continued a criminal prosecution without probable cause and with retaliatory intent. These actions constitute malicious prosecution under Indiana law.

**Relief Requested**

Plaintiff seeks:

- Compensatory damages for emotional, reputational, and financial harm;

- Punitive damages to deter retaliatory prosecution and abuse of process;

- Attorneys' fees and costs, and

- Any other relief the Court deems just and proper.

**Legal Conclusion**

Defendants continued a criminal prosecution without probable cause and with retaliatory intent. These actions constitute malicious prosecution under Indiana law.

**Relief Requested**

Plaintiff seeks:

- Compensatory damages for emotional, reputational, and financial harm;

- Punitive damages to deter retaliatory prosecution and abuse of process;

- Attorneys' fees and costs, and

- Any other relief the Court deems just and proper.

## XII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

(Indiana State Law – Against Judge Bonfiglio, James Fox, Mary Raatz, Thomas Stipp, Heather Schuetz, Lachelle Brown, Lisa Brown, Joel Williams, Eric Blackman, Brent Fifer Jr., Hannah Musgraves and Elkhart County)

**Legal Basis**

Under Indiana law, a plaintiff may establish a claim for Intentional Infliction of Emotional Distress (IIED) by proving:

1.      Extreme and outrageous conduct by the defendant,

2.      That was intentional or reckless,

3.      And caused the plaintiff severe emotional distress.

**Factual Allegations**

1.      Defendants engaged in a coordinated pattern of conduct that was extreme, outrageous, and beyond the bounds of decency—including the removal of Plaintiff's infant child from her care without evidence of abuse, neglect, or unfitness.

2.      Plaintiff was denied all contact with her infant son for over 70 consecutive days, despite a valid court order for supervised visitation and repeated attempts to schedule contact.

3.      Plaintiff's ADA accommodations were ignored, forcing her to choose between violating medical advice or facing contempt and prosecution.

4.      CAPS enforced visitation restrictions that banned whispering, recording and holidays, further traumatizing Plaintiff and her children.

5.       GAL Mary Raatz issued custody-altering recommendations without investigation, having never met Plaintiff, the child, the Father or the siblings.

6.      Attorney Thomas Stipp instructed a drug testing facility not to process Plaintiff's hair follicle test, contributing to a false noncompliance finding and abrupt custody loss.

7.      The court refused to consider Plaintiff's evidence of compliance and imposed psychological evaluations with unaffordable private providers, using her disability against her.

8.      Prosecutors pursued criminal charges based on custody orders lacking jurisdiction, then issued a warrant after Plaintiff submitted valid ADA-based remote appearance requests.

9.      Defendant Brent Fifer Jr., the child's father, knew Plaintiff was diagnosed with Postpartum depression and suffering from trauma. In a text message, he acknowledged that her behavior was a result of her condition and praised her as a loving, supportive mother.

10.     Despite this, Brent Fifer unlawfully withheld the child from Plaintiff for over 70 days, participated in a fraudulent custody action, and leveraged the invalid Indiana process to gain custody without filing a proper custody complaint.

11.      These actions were intentional and retaliatory, causing Plaintiff severe and ongoing emotional distress including PTSD, anxiety, sleep disruption, loss of work and panic attacks. Her children, especially the child's siblings, also suffered emotional trauma and confusion due to the separation.

**Legal Conclusion**

Defendants' actions were extreme and outrageous, committed intentionally or recklessly, and caused severe emotional distress. Plaintiff has a valid claim for Intentional Infliction of Emotional Distress under Indiana law.

**Relief Requested**

Plaintiff seeks:

-       General damages for emotional and psychological harm,

- Costs of treatment, medication, and therapy,- Punitive damages to deter systemic abuse and coercion, - Any further relief this Court deems just and proper.


## XIII CIVIL CONSPIRACY

**(Indiana State Law –** Against Judge Bonfiglio, Referee James Fox, Mary Raatz, Thomas Stipp, Brent Fifer Jr., Heather Schuetz, Lashell Brown, Lisa Brown, Hannah Musgraves, Joel Williams, Eric Blackman, and Elkhart County)

**Legal Basis**

Under Indiana law, civil conspiracy occurs when:

1. Two or more individuals,

2. Agree to commit an unlawful act (or a lawful act by unlawful means),

3. Commit one or more overt acts in furtherance of that agreement, and

4. Cause harm to the plaintiff.

Civil conspiracy is not a standalone tort, but it attaches when the underlying conduct—such as fraud, abuse of process, ADA discrimination, or malicious prosecution—is itself actionable.

**Factual Allegations**

1. Defendants jointly participated in an unlawful scheme to deprive Plaintiff of custody, parenting time, and legal rights under color of law, without jurisdiction or due process.

2. Brent Fifer Jr. initiated the custody proceeding using a paternity statute (IC § 16-37-2-2.1) that applies only to Indiana-born children—despite the child being born in Michigan, where both parents had already signed a valid Acknowledgment of Parentage (AOP).

3.      Defendants never registered the Michigan AOP, yet used it to enter Indiana custody and support orders, bypassing UCCJEA requirements and proper jurisdiction.

4.      GAL Mary Raatz, appointed without legal qualifications, acted under court authority, issued custody recommendations without investigation, and communicated with other defendants behind the scenes.

5.      Thomas Stipp, attorney for Brent Fifer, directly interfered with court-ordered drug testing by instructing the testing facility not to submit Plaintiff's sample—sabotaging her ability to comply with court orders.

6.      CAPS staff—including Heather Schuetz and Lashell Brown—blocked court-ordered visits for over 70 days based on alleged communication with "the judge" and "the clerk," depriving Plaintiff of all contact with her child.

7.      Joel Williams, Eric Blackman, and Lisa Brown furthered the conspiracy by:

-       Enforcing criminal charges rooted in jurisdictionally void orders,

-       Ignoring Plaintiff's federal rights and ADA accommodations,

-       Reinstating prosecution despite diversion compliance,- And escalating enforcement after Plaintiff exercised free speech and filed federal complaints.

8.      Judge Bonfiglio and Referee Fox refused to recuse or rule on pending jurisdictional and disability-based motions, while continuing to issue custody and contempt orders based on the GAL's recommendations.

9.      All defendants shared knowledge of the child's Michigan Birth, the Michigan AOP, the lack of Indiana jurisdiction, and Plaintiff's ADA-protected status—yet acted in concert to deny Plaintiff and her child their legal rights.

10.     The conspiracy caused the complete separation of a child from his mother and siblings, triggering long-term emotional, psychological, and financial harm.

**Legal Conclusion**

Defendants knowingly and intentionally engaged in a coordinated scheme to deprive Plaintiff of her parental rights through unlawful and retaliatory acts. Their actions constitute a civil conspiracy under Indiana law, as they shared intent, committed overt acts, and caused significant harm.

**Relief Requested**

Plaintiff seeks:

-       Joint and several liability for all damages caused by the conspiracy,

-       Compensatory and punitive damages,

-       Legal fees and costs,

-       Any other relief this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ashley Eilene Franklin respectfully prays that this Court enter judgment in her favor and grant the following relief:

**A. Declaratory Relief**

1. Declare that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, including the rights to family integrity, due process, equal protection, and freedom from retaliation. 2. Declare that Defendants violated Plaintiff's rights under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

3.      Declare that the custody and support orders issued by the Indiana court are void due to lack of subject matter jurisdiction and constitutional defects.

4.      Declare that Defendants engaged in civil conspiracy,abuse of process, fraud on the court, and malicious prosecution under Indiana law.

**B. Injunctive Relief**

5.      Enjoin Defendants from enforcing any custody, support, contempt, or criminal orders arising from or connected to the jurisdictionally void Indiana proceedings.

6.      Enjoin Defendants from engaging in future retaliation, obstruction, or denial of Plaintiff's ADA rights.

7.      Order Defendants to restore Plaintiff's access to her child and implement reunification consistent with her legal rights and medical documentation.

8.      Compel Elkhart County to establish oversight procedures for GAL qualifications and ADA compliance in CAPS and family court settings.

**C. Restorative Relief**

9.      Order the immediate reinstatement of Plaintiff's parental rights as required by the Michigan AOP.

10.     Restore visitation rights and prohibit further restrictions on contact between Plaintiff, her child, and her child's siblings.

**D. Compensatory Damages**

11. Award compensatory damages in an amount not less than $25 million for the collective harm caused by all Defendants, who are jointly and severally liable.

**E. Special Damages**

12. Award special damages of at least $300,000 for medical treatment, supervised visitation costs, travel expenses, lost wages, and therapy for Plaintiff and her children.

**F. Punitive Damages**

13. Award punitive damages against individual Defendants in an amount to be determined at trial, based on their intentional, malicious, or grossly indifferent conduct.

**G. Attorneys' Fees and Costs**

14. Award reasonable attorneys' fees, expert witness fees, and litigation costs pursuant to 42 U.S.C. §§ 1988 and 12205.

**H. Other Relief**

15. Grant any such further relief as the Court deems just, equitable, and proper.